(79 App. Div. 433.)

WALDEN v. CITY OF JAMESTOWN.

(Supreme Court, Appellate Division, Fourth Department. January 6, 1903.)

1. MUNICIPAL CORPORATIONS—DEFECTIVE SIDEWALKS—NEGLIGENCE—EVIDENCE.
   In an action against a city for injuries due to a defective sidewalk, the evidence tended to show that the stringers of the walk were rotten, the planks loose and broken, and that this condition had existed for a long time. Other persons had fallen on the walk, but the city had not repaired it. Held, that a finding of negligence was justified.

2. SAME—RESULT OF INJURIES.
   In an action for personal injuries, evidence of an attending physician that the spinal irritation resulting from the accident would probably result in paralysis was competent, since paralysis would be a condition, rather than a new disease, resulting from the injury.

3. SAME—PERMANENCY OF INJURIES.
   Evidence of the attending physician that the injuries would probably prove permanent was admissible.

4. SAME—RESULT OF INJURIES—HARMLESS ERROR.
   Where plaintiff's injuries were proved to have resulted in nervous irritability, it was not prejudicial error for the referee before whom the action was tried to admit testimony of a physician that fatal results might follow such disease, so caused.

5. SAME—HARMLESS ERROR.
   Where the referee who tried a personal injury action made a special finding as to plaintiff's injuries, based entirely on her present condition, and based his award on such finding, any error in the admission of evidence as to the future result of the injuries was rendered harmless.

80 N.Y.S.—5

6. SAME—NOTICE TO CITY OFFICERS—DELAY—EXCUSE.

 The charter of Jamestown (Laws 1898, c. 231, § 2) provides that, where an action is brought to recover for injuries caused by a defective sidewalk, the plaintiff must show that notice in writing of the place of the accident was given the proper officers within 48 hours. *Held*, that where plaintiff, by reason of her injuries, was unable and unfit to prepare such a notice until three days after the accident, service of notice at such time was sufficient.

Appeal from judgment on report of referee.

Action by Emma J. Walden against the city of Jamestown. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

James L. Weeks, for appellant.
Pickard & Dean, for respondent.

WILLIAMS, J. The judgment should be affirmed, with costs.

The action was to recover damages for injuries to the plaintiff alleged to have been caused by the negligence of the defendant. On the 8th day of April, 1900, the plaintiff, while walking along a sidewalk on Warren street, in the city of Jamestown, in company with her daughter, tripped upon a loose plank in the walk, was thrown down, and received the injuries complained of. Evidence was given tending to show that the walk at the place where the accident occurred was broken, and in a defective and unsafe condition, when the plaintiff received her injuries, and had been in such condition for a long time; that the stringers were rotten, the planks loose, and some of them broken, and that other persons, by reason of the defective condition, had fallen upon the walk prior to the time of the accident in question; and that the city had not repaired the walk. Upon all the evidence, the referee was justified in finding that the defendant was guilty of negligence which caused the accident.

The question of contributory negligence was fairly one of fact for the referee, and the evidence authorized the finding made by him, that the plaintiff was free from negligence which contributed to the accident, and prevented a recovery by her in the action.

The plaintiff, when thrown down, struck upon her left knee and head. The patella of the knee was dislocated, and she received a severe schock, causing partial unconsciousness, and resulting in spinal irritation and its attendant consequences. The referee awarded damages in the sum of $1,800. She was a married woman, and 33 years of age. It is claimed that errors were committed by the referee in the reception of evidence given by her attending physician under defendant's objection and exception. The doctor, having testified that her present trouble was spinal irritation caused by the accident, was asked, "What, in your opinion, will be the progress or development of this case in the future?" The defendant objected to the question as incompetent, and not the proper method of proving future consequences. The objection was overruled, and an exception taken, and the doctor answered: "Judging from the condition she is in at present, I think it

¶ 6. See Municipal Corporations, vol. 36, Cent. Dig. § 1706.

might progress along two lines I have indicated in my statement, meaning involvement of the muscles. I think the time may come when it may terminate in paralysis." This answer was, on the motion of the defendant, struck out, and the referee said, "What he wants to know is, what, in your opinion, will be the probable result?" No new objection being interposed, the doctor answered, "My opinion is that it is going to terminate in paralysis before they get through with it." The defendant moved to strike out this answer as incompetent and not proper expert opinion,—no foundation laid for it; and the motion was denied, with exception. The doctor was then asked, "Give us your opinion as to the permanency of the injury?" and under the same objection, ruling, and exception, the doctor answered, "I think they are permanent." Subsequently the doctor was asked the question, "Will these injuries, in your judgment, based upon the facts which have come to your knowledge in your treatment of the patient since the accident, and to which you have testified, prove permanent in their results, or otherwise?" The doctor had already stated that he thought that he could answer this question with reasonable certainty. This question was objected to by defendant as incompetent, improper, and immaterial. The objection was overruled, with exception, and the doctor answered, "My opinion is that they will prove permanent." The doctor was then asked "whether or not nervous irritability caused by a wound or shock might develop into other fatal conditions, with this as the superinducing cause,—the shock or wound." This was objected to as improper, immaterial, and incompetent. The objection was overruled, with exception, and the doctor answered, "I think it may, if I understand the question right." The result of the questions and answers as to paralysis was that the doctor was asked what, in his opinion, would be the probable result of the spinal irritation which the plaintiff was then afflicted with, and his answer was, "Paralysis." The result of the questions as to the permanency of the plaintiff's injuries, fairly construed, and considered all together, was that the doctor was asked whether the plaintiff's condition as it then existed, in his opinion, based upon his own knowledge and treatment of her, to which he had testified, would prove permanent; and he answered that, in his opinion, it would. It is true that the language of the questions was susceptible of a broader significance, so as to cover all the injuries received in the accident, including those to her knee, but concededly she had recovered from the injury to the knee. The trial was before a referee, and not a jury, and the questions must have been understood by the witness and the referee to refer alone to the spinal irritation then existing. The remaining question was not asked as to the plaintiff, but was a question generally as to the result that might develop from nervous irritability caused by an injury, and the answer was that it might be fatal. The answer as to the permanency of the condition and its result in paralysis was properly received. While an apparently rigid rule was laid down in some of the earlier cases (Strohm v. Railroad Co., 96 N. Y. 305; Tozer v. Railroad Co., 105 N. Y. 617, 11 N. E. 369), in the later cases the rule has been relaxed, or perhaps the cases distinguished (Turner v. City of Newburgh, 109 N. Y. 309, 16 N. E. 344, 4 Am. St. Rep. 453; Griswold v. Railroad Co., 115 N. Y. 61, 21 N. E. 726, 12 Am. St. Rep.

775; Knoll v. Railroad Co., 46 App. Div. 527, 62 N. Y. Supp. 16, affirmed without opinion in 168 N. Y. 592, 60 N. E. 1113). In the Turner Case the court said the Strohm and Tozer Cases in no wise conflicted with the rule allowing evidence of physicians as to plaintiff's present condition of bodily suffering or injuries, of their permanence, and as to their cause. In the Griswold Case the court said that the questions objected to related to the permanence of the injuries, and sought a medical opinion as to their continuance in the future, or a recovery from their effects, and that such inquiry was competent and proper; that there was an obvious difference between an opinion as to the permanence of a disease or injury already existing, capable of being examined and studied, and one as to the merely possible outbreak of a new disease, or sufferings having their cause in the original injury; that in the former case that disease or injury and its symptoms were present and existing, their indications were more or less plain and obvious, and from their severity or slightness a recovery might reasonably be expected or the contrary, while an opinion that some new or different complication would arise was merely a double speculation,— one that might possibly occur, and the other that, if it did, would be a product of the original injury, instead of some other new, and perhaps unknown, cause. In the Knoll Case, the doctor, having testified that the plaintiff was suffering from a general mental deterioration and from deafness, and that this condition would be permanent, was also allowed to state that such condition was likely to grow worse as the plaintiff grew older. This was held proper, under the cases referred to above. Under these authorities, both these classes of questions and answers were proper. Paralysis is not a disease. It is a condition resulting from injuries or diseases. The evidence admitted here was to the effect that the condition of the plaintiff as to spinal irritability would grow worse until it finally resulted in the condition of paralysis. This was admissible under the rule now well understood, to which we have referred. The last question, as to fatal results, was not asked as to the plaintiff, or her condition, but was a general question to an expert, as to whether fatal results might follow injuries producing spinal irritability. It was not based upon the doctor's knowledge or treatment of plaintiff, nor was it asked as to the plaintiff at all. We do not think, in that form, it was objectionable, or that it could in any event have injured the defendant, who was trying the case before a referee,—a lawyer,—and not before a jury of laymen. Moreover, it was apparently in answer to some evidence drawn out on an examination of the doctor by the defendant. Even if some of the answers of this witness were improperly received, and there were therefore opinions improperly expressed by him, we are unable to see how they could possibly have injured the defendant. The referee made a specific finding as to the physical condition of the plaintiff resulting from her injuries. He did not find that her injuries were fatal, or permanent, even, or that paralysis would result. The finding was that her injuries had occasioned her much suffering, and that she was then afflicted with spinal irritation and its attendant results, occasioned by the accident and the shock then received by her. This finding was consistent with the evidence of the defendant's medical expert, disregarding all

the evidence of plaintiff's physician complained of. The referee awarded damages based upon this finding, in the sum of $1,800, which was very reasonable, under the circumstances. There is nothing in the reception of the evidence of plaintiff's doctor, therefore, that called for reversal of the judgment.

It is also claimed that the plaintiff could not maintain the action by reason of her failure to serve the notice required by section 2 of the charter of the city (chapter 231, Laws 1898). That section first provides for the presentations of claims in writing to the common council within 30 days after the injuries are received, and provides that "the omission to present any such claim * * * shall be a bar to an action against the city therefor," and that "no action shall be commenced against the city on any duly presented claim until after the expiration of three months from the presentation thereof." And then follows the provision for the notice in question here:

"Where any action is brought against said city, to recover damages for death or personal injuries, caused by defective sidewalks or streets, the plaintiff must show that notice in writing of the place where said accident occurred, out of which said claim arose, was given to the mayor, city clerk, or some alderman of said city, within forty eight hours after the happening thereof, in order to maintain such action. Such notice shall be in addition to the written notice hereinbefore required."

No notice required by the latter part of this section was served within 48 hours after the accident. A notice was served about 72 hours after the accident happened. The referee found that, from the time of the accident until the time the notice was prepared and served, the plaintiff, by reason of her injuries received in the accident, was not in a mental or physical condition rendering it possible for her to transact the necessary business in connection with the preparation and service of such notice, and that she prepared and served the notice as soon as she was in a mental and physical condition enabling her to do so. This provision in a charter was considered and passed upon, under proofs very like these in this case, in Green v. Village of Port Jervis, 55 App. Div. 58, 66 N. Y. Supp. 1042. In that case the notice was served five days after the accident, instead of three days, as in this case, or two days, as required by the charter, but during all that time the plaintiff was not, as the plaintiff in this case was not, in a mental or physical condition rendering it possible for her to transact the necessary business in connection with the preparation and service of the notice, and it was prepared and served as soon as he was in a mental and physical condition enabling him to do so. In that case the appellate division, Second department, held that there was, under the circumstances, a substantial compliance with the statute as to the time of the service of the notice, so as to enable the plaintiff to maintain the action. There is no doubt as to the correctness of that decision. A reasonable construction should be given to the statute. While it is apparent that the legislature in this act intended to provide for very prompt notice to the city of the place where the accident occurred, in order that the city might examine the locality at once, and be able to protect itself against any dishonest claim that might be made, and while in or-

dinary cases 48 hours would be entirely adequate to enable the claimant to give the notice, which is, under this statute, merely of the locality of the accident, yet under some circumstances, manifestly, the statute could not be literally complied with, and to hold that it must be would in these cases be, in effect, holding that no recovery could be had at all. The notice must, of course, be given by the party injured, or by some one acting under his authority, or, if death results, by the personal representative of the deceased person. A notice by some one having no interest in the claim could not be held a compliance with the statute. If the person injured did not. die, but was rendered insensible by the accident, and remained so during the whole 48 hours after the accident, or if the accident rendered the injured person insane, or for any other reason wholly incompetent, and he remained so during the whole 48 hours, in either of these cases no notice could be served, under the letter of the statute. If the person injured was rendered insensible by the accident, and remained so until his death, and there was no opportunity until the 48 hours has elapsed to procure a personal representative to be appointed, then the notice could not be served, under the letter of the statute. It cannot be said with any show of reason that the legislature intended by this statute to deprive claimants of all right of action in cases where the injuries received were of a serious nature, and wherein, from the serious nature of the injuries, there was the stronger reason for holding the city liable for negligence with reference to its streets and sidewalks, and especially when the inability to serve the notice grows out of the very act of negligence for which the right of recovery is given. We are not called upon to lay down any general rule applicable to all cases, but in this case, where the delay in serving the notice was for but 24 hours (1 day after the time provided by the statute), and during the whole time (the 3 days) the claimant was incapable, by reason of her injuries, of transacting any business whatever with reference to the notice, we have no hesitancy in holding that, having served the notice at the earliest moment she was able to do so, the statute was substantially complied with, within the fair meaning and intent of the legislature in enacting the statute. Any other conclusion would be unfair, unreasonable, and unjust, especially when we consider that under the statute the claimant is prohibited from bringing the action until after the expiration of three months from the presentation of the claim, which must be presented within 30 days after the accident occurs.

The foregoing suggestions lead us to the conclusion. that the case was properly disposed of by the trial court, and that the judgment should be affirmed, with costs.

McLENNAN and SPRING, JJ., concur. ADAMS, P. J., and HISCOCK, J., concur in result, upon the ground that the objectionable evidence apparently worked no harm to the defendant.