No. 12,265.

City and County of Denver *v.* Taylor.
(292 Pac. 594)

Decided October 6, 1930.

Mr. Thomas H. Gibson, Mr. E. V. Holland, Mr. George Hetherington, Mr. George O. Bakke, for plaintiff in error.

Mr. W. Penn Collins, Mr. Guy D. Duncan, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Ora A. Taylor, defendant in error, hereinafter referred to as plaintiff, brought this action in the district court against the City and County of Denver, in the state of Colorado, a body politic and corporate, plaintiff in error, hereinafter referred to as defendant, to recover damages for injuries sustained by her while attending a "flower show" in the Denver auditorium.

The plaintiff recovered judgment, to review which the defendant prosecutes this writ, discussing but one assignment of error, i. e., the failure of the plaintiff to give notice of the injury within the time fixed by the charter of the defendant.

The charter provision upon which the defendant relies is: "Before the city and county shall be liable for damages to any person for injuries upon any of the streets, avenues, alleys, sidewalks or other public places of the city and county, the person so injured or some one on his behalf, shall, within sixty days after receiving such injuries, give the mayor notice, in writing, of such injuries, stating fully in such notice, when, where and how such injuries occurred and the extent thereof."

The injuries of which the plaintiff complains were received on November 3, 1925, and no written notice thereof was served upon the mayor until January 29, 1926.

The plaintiff, assuming that notice was required under the charter provision, attempted in his complaint to excuse the timely service thereof by alleging the mental and physical incapacity of the plaintiff during the entire sixty days period, and alleged service of the notice immediately after the incapacity was removed.

The accident in which the plaintiff was injured concededly did not occur "upon any of the streets, avenues, alleys, sidewalks," of the city and county, but did occur in the municipal auditorium, and, unless a municipal auditorium, comes within the purview and meaning of "other public places," our attention is called to no provision of any section of the charter of the defendant requiring notice to be given before liability attaches for injuries sustained.

It is a matter of common knowledge that "streets, avenues, alleys, sidewalks" are public places. We are now called upon to determine what the meaning of the words, "other public places," used in connection with the preceding specific terms, comprehends, and for this purpose are obliged to resort to rules of construction.

In an able opinion by Mr. Justice Campbell, this court, in the case of *Gibson v. People,* 44 Colo. 600, 605, 99 Pac. 333, said: "The contributory delinquent law declares that the 'parent or parents, legal guardian, or person having the custody of such child, *or any other person,'* who contributes to the delinquency of a delinquent juvenile person, 'shall be guilty of a misdemeanor.' Defendant was not a parent, or guardian, or the custodian of the juvenile delinquent, but the attorney general says she comes within the expression 'or any other person.' The familiar general rule, which is enforced in this jurisdiction, is that where words of general import follow specific designations the application of the general language is controlled by the specific. This is but a rule of construction, and is not allowed to defeat the plain legislative will; yet where the legislative intent is doubtful, resort to rules of construction is proper. Applying this rule

to this statute, and bearing in mind that its prime purpose is to provide for delinquent children, as nearly as may be, the care and training which their parents should give but which they do not afford, and to that end substituting governmental authority for parental control, it would seem entirely clear that by 'or any other person' the general assembly meant other like persons; that is, such other persons as occupy towards the delinquent a relation similar to that of parent, legal guardian, or custodian, and upon whom rests the obligation of training, either arising from natural ties, or created by law. The persons specified by no means exhaust the whole genus, but it is apparent that there are other persons who may occupy towards the delinquent a relation similar to that sustained by those enumerated.''

In an exceptionally clear and well reasoned opinion by Mr. Justice Adams, this court, in *Climax Dairy Co. v. Mulder*, 78 Colo. 407, 413, 242 Pac. 666, said: ''Is the above statute [secs. 4027, 4028, 4029, 4030 and 4031, C. L. 1921] intended to include milk or milk receptacles of any kind? Looking at the legislative act, we find the specific words, 'Soda or mineral waters, beer, ale, porter, cider, wine,' followed by the general words, 'or other beverages, or medical or other preparations.' The word 'milk' is not mentioned at all, but plaintiffs in error say that milk is a beverage, and though not expressly named, the meaning must be drawn from the above general words, 'other beverages,' in sections 1 and 4 of the act, or the words, 'or any other article of merchandise,' in section 4 thereof. But to this we cannot agree. In statutory construction, general words following an enumeration of specific things are usually restricted to things of the same kind (ejusdem generis). This rule limits the application of the above general words, 'or other beverages,' to things in the nature of soda or mineral waters, ale, beer, porter, cider or wine. This is not merely a technical rule, to limit or avoid the grasp of a statute; on the contrary, it is to prevent a stretch of meaning beyond

the legislative intendment; it is to determine with accuracy what was in its mind; it is a very old rule of interpretation that has long proven indispensable to those engaged in getting at the meaning of what others have written."

In 36 Cyc. 1119, 1120, we find: "By the rule of construction known as *'ejusdem generis,'* where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that if the legislature had intended the general words to be used in their unrestricted sense they would have made no mention of the particular classes. The words 'other' or 'any other' following an enumeration of particular classes are therefore to be read as 'other such like,' and to include only others of like kind or character."

In 25 R. C. L. 996, we find: "General words in a statute must receive a general construction, unless there is something in it to restrain them, but in accordance with what is commonly known as the rule of ejusdem generis, where, in a statute, general words follow a designation of particular subjects or classes of persons, the meaning of the general words will ordinarily be presumed to be restricted by the particular designation, and to include only things or persons of the same kind, class or nature as those specifically enumerated, unless there is a clear manifestation of a contrary purpose."

In Lewis' Sutherland Statutory Construction (2d Ed.) Vol. II, p. 814, the author says: "When there are general words following particular and specific words, the former must be confined to things of the same kind. This is known as the rule or doctrine of ejusdem generis."

In 21 A. & E. Enc. of Law (2d Ed.) p. 1012, we find:

"Where general words follow particular ones, the rule is to construe the former as applicable to persons or things *ejusdem generis.* This rule, which is sometimes called Lord Tenterden's rule, has been stated, as to the word 'other' thus: Where a statute or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that persons or things therein comprised may be read as *ejusdem generis* with, and not of a quality superior to or different from, those specifically enumerated."

See also: Hardcastle's Construction and Effect of Statute Law, 199; Endlich Interpretation of Statutes, p. 567, sec. 405.; 26 A. & E. Enc. of Law (2d Ed.) 609.

It is obvious that "streets, avenues, alleys, sidewalks" are public places within the city and county, so that it would seem entirely unnecessary to specifically mention them if "other public places" is used in an all-inclusive sense and literal meaning, rather than in the light of the rule of ejusdem generis. If the charter provision was intended to apply to *all injuries* incurred in *all places,* it is entirely proper to assume that it would have been worded similar to the provisions of our statute with reference to the liability of cities of the first and second class, and towns (sec. 9157, C. L. 1921).

If "other public places," as used in the charter, is synonymous with *all public places,* as counsel for defendant contend, we must hold the use of the words, "streets, avenues, alleys, sidewalks," in the charter provision entirely superfluous, redundant and meaningless, adding absolutely nothing. We adopt a contrary construction, namely, that the words "other public places" are restricted to places of the same kind as those specifically quoted, supra.

▮ We are required, under another well known and universally recognized rule of construction, in ascertaining the intent of a legislative body, and the meaning of

its enactments, to give effect to every word, phrase, clause, sentence and section, if it can be done, and we are not to presume that the legislative body used the language idly and with no intent that meaning should be given to its language. *People v. Morgan,* 79 Colo. 504, 507, 246 Pac. 1024; 36 Cyc. 1128.

Applying these rules of construction to the charter provision, in order to assist us in determining what it means, and what the legislative intent was in its enactment, as well as what places were included within its terms, it is clear that a municipal auditorium, constructed by the city and county in its ministerial or private capacity, as distinguished from its governmental or political capacity, is not included within the purview of the charter provisions under consideration. Therefore, the liability of the city and county for negligence, is, under the circumstances of this case, to be determined irrespective of the service of notice of injury. The plaintiff, in alleging service, and in her effort to explain and excuse belated service, did an unnecessary act. *Baker v. Town of Manitou,* 277 Fed. 232; *City of Colorado Springs v. Neville,* 42 Colo. 219, 93 Pac. 1096; *Cunningham v. Denver,* 23 Colo. 18, 45 Pac. 356; *Canon City v. Cox,* 55 Colo. 264, 133 Pac. 1040.

In each case, notice was served, or an attempt made to excuse timely service thereof, and in each case we held that the service of notice was a condition precedent to the right to maintain an action for negligence, but in none of these cases did we hold that a notice was required under a charter or statutory provision similar to the one in the instant case. Our decision in this case does not conflict with the decision in any of the above.

As was said in the case of *Gibson v. People,* 44 Colo. 600, 606, 99 Pac. 333: "The persons specified by no means exhaust the whole genus, but it is apparent that there are other persons who may occupy towards the delinquent a relation similar to that sustained by those enumerated. For example: older brothers and sisters,

96

other blood relatives, teachers, nurses and companions, none of whom are enumerated but are of the same genus.''

■ As might well be said herein: The places specified by no means exhaust the whole genus, but it is apparent that there are other places similar to those enumerated. For example, ''other public places'' might include highways, lanes, places, parkways, thoroughfares, viaducts and bridges, but all such, if included in the same genus as ''other public places,'' must be similar public places to ''streets, avenues, alleys, sidewalks.'' The phrase, ''or other public places,'' immediately following the specifically enumerated ''streets, avenues, alleys, sidewalks'' must be interpreted to include only other such places or other similar places used for animal or vehicular travel, and cannot be held to include public places to which one resorts for entertainment or amusement, such as a municipal auditorium, pavilion, theatre or amusement park.

Judgment affirmed.

MR. CHIEF JUSTICE WHITFORD and MR. JUSTICE CAMPBELL not participating.

MR. JUSTICE BUTLER concurring.

I concur in the affirmance of the judgment. Though I do not dissent from the reason given in the principal opinion, it seems to me that there is a more satisfactory reason for affirmance.

Upon conflicting evidence, the jury found that during the entire period of sixty days immediately following the accident the plaintiff was in such physical or mental condition that she was unable to give notice, or cause notice to be given, within the time specified in the charter. She gave notice after the expiration of the sixty days. There are decisions denying recovery in such circumstances. See *Baker v. Manitou* (C. C. A.), 277 Fed.

232, and cases there cited. But reason, and the weight of authority, it seems to me, are to the contrary.

In those cases with which we heretofore have dealt, the injured person was not physically or mentally unable to give notice; therefore, the question now before us was not presented. The reason assigned for the ruling in the Baker case, supra, and similar cases, is that the legislature has made no exception in favor of one physi-, cally and mentally unable to give notice, and the courts can make none. But this court has given a reasonable construction to statutes requiring notice, and in certain circumstances has upheld a recovery where the literal terms of the statutes have not been strictly complied with. Thus, a statute required that no action against a city of the second class shall be maintained on account of its negligence, unless written notice of the injury is given to the *clerk* of the city within a specified time. No exception is mentioned. Within the time limit the person injured sued the city, and a copy of the summons, with the complaint attached, was served by delivering the same to the *mayor,* not to the city clerk. Shortly thereafter the mayor handed the copies to the clerk, and the matter was thereafter reported by the mayor to the city council. The plaintiff dismissed that action and commenced another, in which she alleged that she had given notice. No other notice was given. We held that such service was a sufficient compliance with the statute. *Canon City v. Cox,* 55 Colo. 264. The Workmen's Compensation Act requires, in terms as peremptory as the charter provision in question, that notice of the injury must be filed within a specified time, or the right to compensation ''shall be wholly barred.'' It makes no exception in case of war, nor does it provide for waiver or estoppel. In *Colorado Fuel & Iron Co. v. Industrial Commission,* 73 Colo. 579, 216 Pac. 706, we held that the failure of the claimants to file the notice within the statutory time did not bar a recovery where, during the entire time within which notice was required to be given, the claimants lived in a for-

eign country which was at war with the United States; in other words, where, by reason of the war, it was impossible to file the notice. We have held also that such notice may be waived, and that in certain circumstances a defendant would be estopped from setting up absence of notice as a defense. *Kettering Mercantile Co. v. Fox,* 77 Colo. 90, 234 Pac. 464; *Greeley Gas & Fuel Co. v. Thomas,* 87 Colo. 486, 288 Pac. 1051.

In the law of insurance, where the contract expressly exempts the insurer from liability if the required notice of loss is not given within the stipulated time, it is the general rule that where, because of circumstances and conditions surrounding the transaction, the giving of notice within the time specified becomes impossible, it will be excused. 14 R. C. L. p. 1333. In *London Guarantee & Accident Co. v. Officer,* 78 Colo. 441, 242 Pac. 989, the contract required proofs of claim to be furnished within a stipulated time. The proofs were not furnished within that time, but were furnished ''as soon as reasonably possible.'' We held this to be sufficient. Other illustrations of the application of the principle will readily occur to the reader.

A statute of Illinois required notice of injury to be given to a municipality within six months from the date of injury. In *McDonald v. Spring Valley,* 285 Ill. 52, 120 N. E. 476, it was held that the failure to give such notice within the time specified did not bar an action by one who, by reason of her extreme minority—she was seven years of age—was mentally and physically incapable of giving the statutory notice. And see *Doerr v. Freeport,* 239 Ill. App. 560. The New York Court of Appeals made the same ruling in the case of a child five years of age. *Murphy v. Fort Edward,* 213 N. Y. 397, 107 N. E. 716. But the rule is not confined to cases of infants. It extends to all cases where the plaintiff has been rendered physically or mentally incapacitated to give the notice, or to cause it to be given, within the required time, particularly where, as here, such incapacity is caused by the de-

fendant's own negligence. In *Green v. Port Jervis*, 55 App. Div. 58, 66 N. Y. Supp. 1042, the court expressed its views in the following forceful language, which is quoted with approval in *Terrell v. Washington*, 158 N. C. 281, 299, 73 S. E. 888: "If compliance with the condition is rendered temporarily impossible by the wrongful act of the defendant, it would be monstrous to allow the defendant to assert that fact as a defense to the action. The requirement of notice necessarily presupposes the existence of an individual capable of giving it, and not one deprived of that power by the operation of the very wrong to be redressed. That the defendant should be permitted to take advantage of its own wrong is clearly not within the purview of the law." See also: *Forsyth v. Oswego*, 191 N. Y. 441, 84 N. E. 392; *Walden v. Jamestown*, 178 N. Y. 213, 70 N. E. 466, approving and adopting the reasoning in the opinion in the same case in 79 App. Div. 433; *Winter v. Niagara Falls*, 190 N. Y. 198, 82 N. E. 1101; *Hartsell v. Asheville*, 166 N. C. 633, 82 S. E. 946.

In an elaborate note, 31 A. L. R. 619, published in 1924, it is said: "There is considerable authority to the effect that failure to give notice of an accident or injury within a specified time thereafter as a condition of holding a municipality liable therefor does not necessarily bar recovery, since failure to comply with the literal terms of the statute may be excused by showing extenuating circumstances, such, for example, as physical or mental incapacity, etc., during the statutory period." Many cases are cited in support of the statement. On page 625 it is said that there have been "a few decisions" to the contrary, citing cases.

Some of the cases holding an injured person to a strict compliance with the statutory provision concerning notice, and recognizing no excuse for noncompliance, stress the fact that in those cases the liability of the municipality was purely statutory, from which it is argued that no one has a right to object to a statutory modification

100

thereof, or the imposition of a condition precedent. See note, 31 A. L. R. 627. A distinction between such a case and one where the liability is not created by statute, but exists at common law, does not seem to be wholly unjustifiable. In the former, the right of action owes its very existence to the statute; whereas in the latter, the legislature seeks to impose a restriction upon a right existing independently of statute. The Denver auditorium was constructed as a place of resort, instruction and entertainment for its citizens, and at the time of the accident a flower show was being held therein. In constructing and maintaining the building, the municipality acted in its private, corporate and proprietary capacity, not in its governmental capacity; hence the liability of the municipality is a common law liability. *Denver v. Spencer,* 34 Colo. 270, 82 Pac. 590; *Denver v. Davis,* 37 Colo. 370, 86 Pac. 1027; *Canon City v. Cox,* 55 Colo. 264, 133 Pac. 1040; *Denver v. Maurer,* 47 Colo. 209, 106 Pac. 875; *Denver v. Dunsmore,* 7 Colo. 328, 3 Pac. 705; *Barnes v. District of Columbia,* 91 U. S. 540, 23 L. Ed. 440; *Randolph v. Springfield,* 302 Mo. 33, 257 S. W. 449; *Terrell v. Washington,* 158 N. C. 281, 73 S. E. 888. To be valid, the restriction upon the right to recover must not be unreasonable. *Randolph v. Springfield, supra; McDonald v. Spring Valley,* 285 Ill. 52, 120 N. E. 476; *Hughes v. Fond du Lac,* 73 Wis. 380, 41 N. W. 407. To require an injured person to do what is impossible for him to do would be unreasonable, and we cannot assume that such was the intent of the framers of the charter.

The Constitution of Colorado (art. 2, §6) provides, ''That courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character * * *.'' The Constitution of Missouri has substantially the same provision, and its statute concerning notice is similar to the provision in the Denver charter. In *Randolph v. Springfield,* 302 Mo. 33, 257 S. W. 449, it was held that a failure to give the notice within the statutory time does not relieve a munici-

pality from liability to one who, by reason of his physical or mental disability, is unable to give the notice within the specified time. It was said that to so construe the statute as to bring about that result would be unthinkable, especially where such inability was the result of "the negligence of the city which injured him," and that such construction would bring the statute into conflict with the Constitution. The court also said: "In the case at bar, the plaintiff had a right of action at common law as soon as she was injured by the city. No act of the Legislature would be valid which clogged or encumbered her right to enforce such common-law right with impossible conditions, such as to require her to give notice when she was physically or mentally incapable of so doing, or other conditions impossible of performance, without her fault."

To adopt the strict rule, which we should decline to do, would be equivalent to offering this suggestion to municipalities: If you are negligent on any occasion, see to it that your negligence is sufficiently gross to insure the complete physical and mental disability of the victim; for by doing so, you will avoid the necessity of paying damages, which you would be required to pay if the victim were left in possession of his faculties.

The affirmance of the judgment is in accordance with both law and justice.