Mr. David L. Paul Commissioner State Savings and Loan Division 110 State Services Building 1525 Sherman Street Denver, Colorado 80203
Dear Mr. Paul:
This is in response to your October 15, 1980 request for an opinion whether C.R.S. 1973, 11-41-114(1)(a) grants authority to the state savings and loan commissioner (commissioner) to approve, by rule or regulation, a renegotiable rate mortgage plan and a variable rate mortgage plan for state-chartered savings and loan associations. If such mortgage plans are authorized, your request further presents the inquiry whether such mortgage plans are deemed to be nonconforming loans within the meaning of C.R.S. 1973, 11-41-114(4) (Supp. 1979).
QUESTIONS PRESENTED AND CONCLUSIONS
You have asked the following questions:
1. Does C.R.S. 1973, 11-41-114(1)(a) grant authority to the state savings and loan commissioner to approve, by rule and regulation, a variable rate mortgage loan plan for state-chartered savings and loan associations?
 My opinion is "yes," provided the loan is secured by a first lien trust deed or mortgage upon improved real estate.
2. If the answer to the preceding question is in the affirmative, is such mortgage loan plan deemed to be a nonconforming loan within the meaning of C.R.S. 1973,11-41-114(4) (Supp. 1979) and thus restricted to an amount not exceeding 3 percent of the association's assets.
 My opinion is "no." Such mortgage loan plan is not subject to this restriction and may exceed 3 percent of the association's assets.
ANALYSIS
1. Question one concerns the commissioner's authority to approve mortgage loan plans not otherwise specifically authorized by statute. The statute which is the primary focus of your first inquiry, C.R.S. 1973, 11-41-114(1)(a), provides that:
 (1) Any savings and loan association may invest any portion of its funds in any of the following: (a) Loans to its members, secured by first lien trust deeds or mortgages upon improved real estate, and upon such plans of repayment, as provided in section 11-41-119, and in such other loans to its members as the commissioner may approve.
(Emphasis supplied.)
In a general sense, a variable rate mortgage plan permits the interest component of a real estate loan to be determined by a mortgage interest index, whether it be a federal, state or private one, which will fluctuate based on market conditions and result in an altered interest rate at a prescribed time,e.g., quarterly or annually. The amount of interest in each payment, installment or otherwise, is not predetermined. The extent to which the interest rate may fluctuate over the life of the loan, or its intermediate renewable terms, may be limited by contract or regulation governing the financial institution. As used here, a variable rate mortgage encompasses generically a renegotiable rate mortgage, graduated payment mortgage and similar real estate plans.
A variable rate mortgage plan is not specifically authorized by any other statutory section in article 41, title 11 (C.R.S.).[1]
An earlier attorney general's opinion, dated August 18, 1966, which I have attached, also construing section 11-41-114(1)(a), limited the commissioner's approval authority to only those loans which are secured by first lien trust deeds or mortgages upon improved real estate. I agree with that result. It is supported by the established rule of statutory construction known asejusdem generis. The rule operates to construe general words which follow specific words in an enumeration describing the legal subject. The general words are construed to embrace only objects similar in nature to those in the class enumerated by the preceding specific words. 2A C. Sands, SutherlandStatutes and Statutory Construction, EjusdemGeneris, § 47.17 (4th ed. 1973). This rule of construction has been applied consistently in Colorado cases since 1890. See Hurd v. McClellan, 14 Colo. 213,215, 23 P. 792 (1890); Gibson v. People,44 Colo. 600, 605, 99 P. 333 (1909); Climax Dairy Co. v.Mulder, 78 Colo. 407, 413, 242 P.2d 666 (1926); Cityand County of Denver v. Taylor, 88 Colo. 89,292 P. 594 (1930); Bowman v. Eldher, 149 Colo. 551,369 P.2d 977 (1962); Lyman v. Town of Bow Mar, 188 Colo. 216,222, 533 P.2d 1129 (1975). See AmericanSurety Co. of New York v. Marotta, 287 U.S. 513,53 S.Ct. 260, 77 L.Ed. 466 (1933).
Applying the principle here, the class of investments set forth in section 11-41-114(1)(a) includes the following elements:
a. loans to its members;
 b. secured by first lien trust deeds or mortgages;
c. upon improved real estate.
Each of these elements is a necessary ingredient in this class. Had the legislature not intended that each element be necessary it could have simply authorized an investment in "loans to its members." The method of repayment is not an element of the class, because this feature of a loan is not indispensable to the security of a first lien upon improved real estate, whether the loan be a direct reduction installment, or interest only loan, contemplated in 11-41-119, or a variable rate mortgage loan under11-41-114(1)(a).
Thus, application of this general rule of statutory construction to ". . . such other loans . . ." authorizes the commissioner to approve first lien mortgage loans upon improved real estate, such as the variable mortgage rate plan referred to above.
The commissioner may approve such mortgage plans only after adoption of rules and regulations in accordance with the State Administrative Procedure Act. C.R.S. 1973, 24-4-103, as amended (Supp. 1979). Rules and regulations operate to help ensure the sound exercise of the commissioner's discretion and to eliminate claims that his actions were arbitrary or capricious. The adoption of rules and regulations is mandated by Elizondo v.Dept. of Revenue, 194 Colo. 113, 570 P.2d 518 (1977).
2. This question requires a determination whether the loans approved by the commissioner pursuant to section 11-41-114(1)(a) are nonconforming loans subject to the three percent (3%) limitation set forth in section 11-41-114(4), as amended 1977 (Supp. 1979). That section provides:
 (4) An association may loan an amount not exceeding three percent of the association's assets in a manner not otherwise authorized by articles 40 to 47 of this title, on condition that such loans are related to real estate or housing.
(Emphasis added.)
Resolution of this issue depends upon whether the phrase "not otherwise authorized" means not otherwise specificallyauthorized by statute, or not otherwise allowed by statute. If the former interpretation is correct, the mortgage loan plans are nonconforming. If the latter interpretation is proper, then such approved mortgage loan plans may be characterized as conforming loans, i.e., authorized loans, and not subject to the 3 percent limitation.
The term "authorized" has been held to be synonymous with the term "permit." State v. Laver, 270 Wis. 524,71 N.W.2d 287, 290 (1955); Griffin v. Board of Supervisorsof Prince Edward County, 203 Va. 321, 124 S.E.2d 227, 231
(1962); In Re Hilliard's Estate, 86 N.Y.S.2d 158, 1959 (1948); Weatherford, M.W. and N.W.R.Y. Co. v.Crutcher, 141 S.W. 137, 142 (Tex.Civ.App.); West v.F. W. Woolworth Co., 215 N.C. 211, 1 S.E.2d 546, 548 (1939);Kerrigan v. Errett, 256 N.W.2d 394, 399 (Iowa 1977).
Since variable rate mortgage loans are permitted under11-41-114(1)(a) it is incorrect to say that ". . . such other loans. . ." under this section are "not otherwise authorized." As demonstrated above, they are authorized and, thus, exempt from the 3 percent limitation under 11-41-114(4).
SUMMARY
C.R.S. 1973, 11-41-114(1)(a) authorizes the commissioner to approve "such other loans" that are not otherwise authorized under the Savings and Loan Association Act, provided that the loans so approved are secured by first lien trust deeds or mortgages upon improved real estate. Such mortgage loan plans are not subject to the 3 percent limitation under C.R.S. 1973,11-41-114(4). However, such mortgage loan plans may not be approved by the commissioner on a selective basis, but only upon proper compliance with the rulemaking provisions of the State Administrative Procedure Act. C.R.S. 1973, 24-4-103, as amended (Supp. 1979).
Very truly yours,
 J.D. MacFARLANE Attorney General
BANKS AND BANKING LOANS MORTGAGES AND FORECLOSURES RULES AND REGULATIONS
C.R.S. 1973, 11-41-114(1)(a) C.R.S. 1973, 11-41-114(4)
REGULATORY AGENCIES, DEPT. Savings Loan, Div. of
C.R.S. 1973, 11-41-114(1)(a) authorizes the commissioner to approve "such other loans" that are not otherwise authorized under the Savings and Loan Association Act, provided that the loans so approved are secured by first lien trust deeds or mortgages upon improved real estate. Such mortgage loan plans are not subject to the 3% limitation under C.R.S. 1973,11-41-114(4). However, such mortgage loan plans may not be approved by the commissioner on a selective basis, but only upon proper compliance with the rulemaking provisions of the State Administrative Procedure Act. C.R.S. 1973, 24-4-103, as amended (Supp. 1979).
[1] These mortgages stand in stark contrast to a direct reduction installment loan provided by 11-41-119(3)(a) which consists of fixed periodic payments of principal and interest during the term of the loan. Interest is paid on the reduced principal balance. As each payment is made, the interest paid declines while the amount of principal due is reduced.See Unger and Melicher Real Estate Finance, Southwestern Publishing Co. (1978), p. 82. Thus, a direct reduction installment loan is one requiring a fixed and predetermined payment on principal. Each installment payment consists of a predetermined amortization of principal.