No. 11,071.

CLIMAX DAIRY COMPANY, ET AL. *v.* MULDER.

Decided November 23, 1925.   Rehearing denied January 11, 1926.

Action for damages for malicious prosecution. Judgment for plaintiff.

## *Reversed.*

1.  STATUTES—*Construction.*   In statutory construction, general words following an enumeration of specific things are usually restricted to things of the same kind.

2.  *Construction—Beverages—Receptacles.*   Section 4027, C. L. '21, providing that manufacturers, bottlers, or dealers in soda or mineral waters, beer, ale, porter, cider, wine or other beverages may use certain marked receptacles therefor, and section 4028, making it unlawful for other persons to use them without the written consent of the owner, have no application to milk or milk receptacles.

3.  MALICIOUS PROSECUTION—*Action—Pleading and Proof.*   In order to maintain an action for malicious prosecution, the plaintiff must both plead and prove that defendant was guilty of malice, and that there was a lack of probable cause for the institution of the proceedings.

4.  *Probable Cause—Advice of Counsel.*   In an action for damages for malicious prosecution based on a complaint and trial for unlawfully having possession of milk cans and bottles of another without his consent, it is held, that complainant having stated the facts fully and fairly to the district attorney who incorrectly determined such facts to constitute a crime and authorized the initiation of the prosecution, there was no liability.

**407**

5.　　*Probable Cause—Advice of Counsel.* Where defendant in a
malicious prosecution action relies on advice of counsel as a
defense, the statement of facts to be made to counsel are all
those within his knowledge or which by reasonable diligence
he might know, that bear upon the innocence or guilt of ac-
·cused. It does not necessarily involve a confession of other or
like sins on the part of informant.

*Error to the District Court of Jefferson County, Hon.*
*Samuel W. Johnson, Judge.*

Mr. WALTER E. SCHWED, Mr. WILBUR F. DENIOUS, Mr.
HUDSON MOORE, Mr. SIMON J. HELLER, for plaintiffs in
error.

Messrs. QUAINTANCE & QUAINTANCE, for defendant in
error.

*Department One.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THIS is an action in tort by John Mulder, defendant in
error, and plaintiff below, against J. B. Snow and the de-
fendant dairy companies for damages, alleging malicious
prosecution. It resulted in a judgment for plaintiff and de-
fendants bring error.

Four dairy companies were named in the complaint: The
Climax, City Park, Producers, and Windsor Farm. The
individual defendant, Snow, was claimed by plaintiff to be
the agent of all of the other defendants; he was held to be
the agent of all of them except the Producers Dairy Com-
pany. At the close of plaintiff's testimony, defendants
moved for a nonsuit; the court granted the motion as to
the Producers and denied it as to the other defendants;
they offered no testimony and are here on error; the Prod-
ucers Company is not before us.

Under a search warrant, based upon an affidavit, the
premises of Mulder, who was a dairyman in Jefferson

county, were searched for certain milk bottles, cases and cans alleged to have been secreted in and about his place. Bottles or cans were found bearing the marks or brands of the alleged owners, which were taken from him, but returned to him directly after the trial. Mulder was arrested and brought before a justice of the peace; his detention lasted some two or three hours; he had an expense of fifty dollars for attorney's fees and sixty-six dollars for new milk bottles added to his stock for use in his own business; there was no evidence of his having lost any customers in his milk business, but he testified that he was humiliated by the proceedings; he was not put in jail, nor required to give bond; he was tried, acquitted, and discharged, which ended the case against Mulder, and he then sued the above defendants. The jury awarded him twelve hundred and fifty dollars as actual damages and seven thousand five hundred dollars for exemplary damages, against Snow and all of the dairy companies named except the Producers, the latter having obtained a nonsuit. Unless otherwise designated, we shall refer to them as in the trial court, to Mulder, defendant in error, as plaintiff, and to plaintiffs in error as defendants.

The affidavit upon which the seach warrant was based was made by the defendant J. B. Snow before the justice of the peace. Snow alleged in his affidavit that he was the agent of the four dairy companies named above, and in effect that he had reason to believe and did believe that Mulder was using bottles, cases and cans, bearing the brands or marks of the above four dairy companies without their written consent; that Mulder had such bottles, cases and cans secreted in and about his premises and that the four dairy companies and complied with the provisions of sections 6853, 6854, 6855, 6856 and 6857, Revised Statutes of Colorado, 1908. The above sections are the same as Compiled Laws 1921, sections 4027, 4028, 4029, 4030 and 4031. The criminal complaints were also sworn to by Snow, one of which referred to sixty-four glass milk bottles and one can alleged to belong to the Producers Dairy Company, and

the other to twenty glass milk bottles alleged to belong to the City Park Dairy Company, which the complaints charged in the language of the above statutes that Mulder had used or secreted without the consent of the owners.

A very good statement of some of the facts necessary to get a birdseye view of the case was made by defendants, incorporated by them in a motion for change of place of trial, and signed by the respective attorneys for each of such defendants. We quote some of the language of the motion on account of its being so concrete and well expressed, as well as because it is authoritive from the standpoint of the defendants, and is also endorsed by plaintiff as a correct statement of such matters. It is; as follows: "That the defendant corporations and each of them have their principal office and place of business located in the City and County of Denver, State of Colorado, and as such are engaged generally in the wholesaling and retailing of milk and cream in said City and County of Denver and surrounding territory; that said defendants and each and all of them distribute their milk and cream in cans, cases and glass bottles and that each of said defendants has engraved and embossed thereon its name and other wordings and designations of ownership; that for many months last past these defendants have been endeavoring to induce other dairymen, some of whom are located in the County of Jefferson, State of Colorado, to cease using any of the bottles, cans or other designated equipment of the defendants, and that said action has resulted in the bringing of at least two criminal actions in Jefferson County, one against C. H. Rose and one against the plaintiff herein, John Mulder, the result of which is the basis of this cause of action herein on said John Mulder's part."

The act upon which the search warrant and criminal complaint against Mulder was based, was passed by the General Assembly of Colorado in 1891, and is entitled "An Act in Relation to the Brands and Property Marks of Bottles, Kegs, Casks, Barrels, Boxes, Fountains, Syphons and Other Vessels, and for the Protection of the Owners there-

of, and Providing a Penalty for the Violation hereof." Session Laws Colo. 1891, pages 46, 47, sections 1 to 5, both inclusive, Compiled Laws 1921, sections 4027, 4028, 4029, 4030 and 4031. It reads:

"Section 1.    All manufacturers, or bottlers of, or dealers in, soda or mineral waters, beer, ale, porter, cider, wine or other beverages, or medical or other preparations, who may use barrels, kegs, casks, boxes, fountains, bottles, jugs, syphons, or other vessels, upon which shall appear the names, brands, marks, trademarks, or other designations of ownership, stamped, impressed, engraved, or in any manner affixed thereon, may file in the office of the county clerk of the county wherein the principal office, manufactory or depot of such business is located in this State, a description of the names, brands, marks, or other designations of ownership, so used by them respectively, and cause the same to be published for two successive weeks in a newspaper of general circulation in such county. (Compiled Laws, 1921, sec. 4027).

"Sec. 2.    It shall be unlawful for any person or persons, without the written consent of the owner or owners thereof, to use, sell, dispose of, buy, or traffic in, or to wifully break, destroy or otherwise injure any such barrels, kegs, casks, boxes, fountains, syphons, bottles, jugs or other vessels, to wilfully mar or erase any such names, brands, marks or other designations so appearing thereon, or to fill the same with other beverages, medicines, compounds, or substances whatever. (Compiled Laws, 1921, sec. 4028).

"Sec. 3.    Any person or persons, association or corporation, who shall violate any of the provisions of this act, shall be deemed guilty of a misdemeanor, and, upon conviction thereof before any justice of the peace, shall be fined five (5) dollars for every barrel, keg, cask, box, syphon or fountain, and one (1) dollar for every bottle, jug, or other vessel so by him or them used, sold, disposed of, bought, trafficked in or so marred, erased, broken, destroyed or otherwise injured, or filled, together with costs of prosecution; and the employer or principal shall be so liable for

the acts of his employes or agents for any such violation of this act, when engaged in the business of such employer or principal. (Comp. Laws, 1921, sec. 4029).

"Sec. 4. The using by any person other than the rightful owner thereof, without such written permission, of any such cask, barrel, keg, fountain, bottle, syphon, box or other vessel for the sale therein of ale, porter, lager beer, soda, mineral waters, or other beverages, or any other article of merchandise, medicine, compound or preparation, or to be furnished to customers, or the buying, selling, or trafficking in any such barrel, keg, bottle, fountain, syphon, box or other vessel by any person other than the owner, without the written permission of such owner, or the fact that any junkdealer or dealers in casks, barrels, kegs, bottles, boxes, or other vessels, shall have in his or her possession any such cask, barrel, keg, bottle, fountain, syphon, box or other vessel, so marked or stamped, and registered as aforesaid, without such written permission, shall and is hereby declared to be prima facie evidence that such use, buying, selling, trafficking in or possession is unlawful within the meaning of this act. And it is hereby declared to be the duty of any justice of the peace, upon oath having been made in writing before him, that any person or persons, association or corporation, has violated any of the provisions of this act, to immediately issue his warrant and cause such person or persons so accused to be brought before him, and proceed to try such accused party, as in cases of assault and battery, and in case such accused party be found guilty of having violated any of the provisions of this act, shall assess the fine, as provided in the third section of this act, such fines and costs to be collected as provided by law in other cases of misdemeanor. (Comp. Laws, 1921, sec. 4030).

"Sec. 5. In case such owner or owners of any such cask, barrel, bottle, box, fountain, syphon or other vessel, shall, in person or by his agent, make oath, in writing before any justice of the peace, that he has reason to believe, and does believe, that any other person is using in any manner by

this act declared to be unlawful, any of the casks, barrels, kegs, bottles, boxes, fountains, syphons or other vessels, of such person, or his principal, or that any junkdealer, or dealer in casks, barrels, kegs, bottles, or boxes, or any other dealer, manufacturer, or bottler, has any such casks, barrels, kegs, bottles, boxes, fountains, syphons or other vessels secreted in, about, or upon his, her or their premises, the said justice of the peace shall issue his search warrant and cause the premises so designated to be searched, as in other cases where search warrants are issued, as is now provided by law. And in case any such cask, barrel, keg, bottle, box, fountain, syphon or other vessel shall be found in, upon or about the premises so designated, the officer executing such warrant shall thereupon arrest the person or persons named in such search warrant, and bring him, her or them before the justice of the peace who issued such warrant, who shall thereupon hear and determine such case, and if the accused is found guilty, he, she or they shall be fined as provided in the third section of this act." (Comp. Laws, 1921, sec. 4031).

The main questions to be determined are: (1) Whether the above statute includes milk or milk receptacles, and (2) As to whether, under the circumstances of this case, an action for malicious prosecution can be maintained by one who has been prosecuted under a statute having no bearing upon the acts complained of and that did not amount to a crime. The adjudication of these matters will carry with it all that is required to decide the controversy. It is therefore not necessary to discuss the question of damages, either actual or exemplary, nor other points raised.

1. Is the above statute intended to include milk or milk receptacles of any kind? Looking at the legislative act, we find the specific words, "Soda or mineral waters, beer, ale, porter, cider, wine," followed by the general words, "or other beverages, or medical or other preparations." The word "milk" is not mentioned at all, but plaintiffs in error say that milk is a beverage, and though not expressly named, the meaning must be drawn from the above general

words, "other beverages," in sections 1 and 4 of the act, or the words, "or any other article of merchandise," in section 4 thereof. But to this we cannot agree. In statutory construction, general words following an enumeration of specific things are usually restricted to things of the same kind (ejusdem generis). This rule limits the application of the above general words, "or other beverages," to things in the nature of soda or mineral waters, ale, beer, porter, cider or wine. This is not merely a technical rule, to limit or avoid the grasp of a statute; on the contrary, it is to prevent a stretch of meaning beyond the legislative intendment; it is to determine with accuracy what was in its mind; it is a very old rule of interpretation that has long proven indispensible to those engaged in getting at the meaning of what others have written. . Take this case: Plaintiffs in error lay great stress upon the important uses of milk. In this they are of course right, but the more emphasis that is placed upon the word "milk" in this connection, the more conspicuous becomes its omission from the wording of the statute. It is unlike any of the particularly enumerated things mentioned in the act; it comes within a wholly different group or class and in importance may be said to excel all of the things combined in the other classes named in the statute. If it was intended that this law should include milk or dealers in milk, we think that such word would have been one of the first that the law makers would have thought of, and that they would have put it in the act, and that they did not intend to conceal the thought of this common and most essential commodity underneath an alias of "other beverages," nor in any "et cetera" clause to the main idea. Webster's International Dictionary further bears out our impression, in its definition of a beverage as "Usually a drink artificially prepared." Milk is not artificially prepared.

The Supreme Court of Illinois, in construing a similar statute, said in *Lippman v. People*, 175 Ill. 101, 106, 51 N. E. 872: "The act in question applies only to manufacturers, bottlers and dealers in ale, porter, lager beer, soda,

mineral waters and other beverages. The term 'other beverages,' under the settled rule of construction, includes only beverages of the same kind or class as the particular antecedent terms of description employed in the act."

We are beset with no regrets in following such a construction, because we believe it to be a correct interpretation of the legislative will, and further, as the Illinois Supreme Court appropriately said in *Lippman v. People, supra,* the act is for a mere private benefit, having no relation to the police power or the protection of the public against frauds or injurious preparations, since, if the owner consents, "the bottles or kegs may be refilled with any sort of drink different from the marks and it will be no offense under the act, however injurious to the public. The citizen or health officer can neither institute a prosecution nor cause search to be made, but in either instance it must be by the owner or agent. The public has no rights under it, and neither the title nor any provision indicates any public purpose."

Counsel for defendant in error urge as an additional reason why the statute in question should not be used as a basis for a criminal prosecution, that it is class legislation and that it violates the constitutional provision forbidding unwarranted searches and seizures, citing *Lippman v. People, supra; Horwich v. Walker-Gordon Laboratory Co.,* 205 Ill. 497, 68 N. E. 938, 98 Am. St. Rep. 254, and *State of Ohio v. Schmuck,* 77 Ohio St. 438, 83 N. E. 797, 14 L. R. A. (N. S.) 1128, 122 Am. St. Rep. 527. The opinion of these courts is entitled to the greatest of respect, and we have not hesitated to follow them, but since we hold that the Colorado act does not include milk or milk receptacles, we are not moved to search for further reasons on this point, and do not need to decide the additional questions presented. It is sufficient to say that the search of Mulder's premises, the seizure of bottles or cans in his possession and his subsequent arrest were all founded upon a statute having no bearing upon the acts complained of.

2. As to malicious prosecution: In order to maintain

an action for malicious prosecution, the plaintiff must both plead and prove that defendants were guilty of malice, and also that there was lack of probable cause for the institution of the proceedings. *Van Meter v. Bass,* 40 Colo. 78, 90 Pac. 637, 18 L. R. A. (N. S.) 149.

The plaintiff in this case did plead both of these requirements and issue was tendered thereon by the general denial.

Defendants offered no testimony, but they assert that plaintiff not only failed to sustain the burden of proof, but that plaintiff's evidence affirmatively established the absence of malice and the existence of probable cause.

Upon the question of probable cause, we are confronted with the fact that the so-called criminal action against defendant brought before the justice of the peace, was under a statute that had no application to the facts; in other words, the defendant was arrested on a charge not amounting to a crime.

As to whether a civil action for malicious prosecution can be maintained under these circumstances, the decisions are at variance. 18 R. C. L. p. 21. In the same volume; 18 R. C. L., at page 36 it is said: "The question of the presence or absence of probable cause for a criminal prosecution does not depend upon the guilt or innocence of the accused, or upon the fact whether or not a crime has been committed. If a person acts upon appearances in making a criminal charge, and the apparent facts are such as to lead a discreet and prudent person to believe that a crime has been committed by the party charged, although it turns out that he was deceived, and the party accused was innocent, yet he will be justified. Thus, for instance, it has been held that probable cause exists for the prosecution of one for violation of a statute, although the act is not in fact such violation, where the statute is of such doubtful construction that the prosecutor was thereby induced honestly to believe that it was so."

Whatever may be the rule in other jurisdictions, this court has held in *Van Meter v. Bass, supra,* that if the complaining party states the facts fully and fairly to the dis-

trict attorney, and that such officer incorrectly determines that such facts constitute a crime, and proceeds to formulate the necessary papers to set on foot the prosecution, the complaining party is not liable; since the fault is not his, but that of the officer. This principle of law in *Van Meter v. Bass* was applied in a suit for malicious prosecution under a criminal statute supposed to cover, but which did not in fact cover the acts that had been committed. Such is the situation in the instant case.

To establish responsibility upon the part of the defendant dairy companies, the plaintiff was obliged to prove that these companies procured or induced the proceedings in the justice court against plaintiff, or that they ratified the acts of the person or persons presuming to act for them, making him their agent for the purpose. We shall assume, for the purposes of the case, that Snow was the agent for all of the other defendants, as claimed by plaintiff. It is true that Snow's statement in his affidavit before the justice of the peace that he was their agent is not evidence of such fact, but we are not relying upon his statement to this effect. We shall base the assumption of his agency for the other defendants upon the statement of counsel for such defendants in their motion for change of venue, including the parts that we have quoted above, as well as other parts not quoted, and also upon other facts and circumstances connected therewith, as shown by the evidence, which are not necessary to recite in this opinion. We shall also assume, for such purposes, that one of the attorneys, who was active in the prosecution against plaintiff, was the representative of one or more of the defendant dairy companies, and in addition that he represented Snow.

But although such agency be considered as having been fully established, nevertheless the plaintiff proved still more; namely, that before the suit before the justice of the peace against plaintiff had been commenced, Snow had consulted twice with the district attorney about bringing the case against Mulder and that Snow had told the district attorney the facts of the case; that both Snow and the at-

torney referred to were present at the second interview with the district attorney, and that the latter and the other attorney went carefully into the statute. The district attorney was one of plaintiff's witnesses, the above facts were established by his uncontradicted testimony, and the fact of such interview was also testified to by the other attorney, who was called by plaintiff for cross-examination under the statute.

Plaintiff, however, says that it does not appear that the facts were all fully and fairly presented to the district attorney, to enable him to properly advise Snow or his principals. Is this correct?

The substance of the district attorney's testimony, in so far as it bears on this point, was that he remembered the complaint against John Mulder; that Snow told him that he was representing at least one of the dairy companies; that Snow also told the district attorney that they were having trouble with people who were stealing their bottles or who were taking bottles and using them without authority; that they had a large investment in their bottles and that it was impossible to keep track of them because of these acts, and that the particular party about whom he was complaining had quite a number of their bottles, and that they had demanded them of him and he had refused to give them up; that Snow wanted a search warrant to be followed up by a complaint under the statute, for violation of the statute with reference to matters of that kind. The district attorney also testified that he told Snow to send in his attorney; that the attorney and Snow both came some time after; the witness and the other attorney went very carefully over the statute governing matters of this kind and made a study of it; after going over it, the district attorney said that he would authorize his deputy to instruct the justice of the peace to issue the search warrant and complaint for prosecution, the attorney to guarantee costs in case no conviction was had. The district attorney further testified that he never issued a complaint under any circumstances unless he felt that the facts and the law

warranted a hearing, and that there was a chance, and he said that this was just exactly what was done in this case; he testified also that he felt, after the facts had been presented, that it was sufficient to warrant a judicial hearing and determination as to whether or not there was a violation of law.

There was no element of the alleged crime omitted in the statement to the district attorney, upon which he based his advice. He was misled, not by any incomplete or incorrect statement of the facts, but by his own honest but mistaken conception of the effect of a statute that until this decision had not been passed upon by the higher court, and which his advice shows clearly that he supposed covered the character of the business engaged in by the dairy companies, though in fact it did not. The facts that were not told the district attorney, that the plaintiff says the defendants should have told him, related to evidence concerning a general and well known custom that had existed for many years and that had been universally followed by dairymen and dairy companies, including the defendants, that each would use whatever milk bottles or cans were picked up by their drivers in the usual course of business, regardless of the brands or marks thereon, without the required consent of the owners, whether such brands or marks were registered or not; that this practice of the indiscriminate use of such bottles was participated in by them as well as by the general public using milk, and that the same general custom applied to milk cans. In other words, the plaintiff claims that defendants themselves were violating or disregarding the same statute that defendants were accusing the plaintiff of having broken.

Such matters, however, were unessential for the district attorney to know in giving his advice. The full, fair and honest statement of the facts to be made to the district attorney or to counsel whose advice is sought, are all of the facts within the party's knowledge, or which by reasonable diligence he might know, that bear upon the guilt or innocence of the accused, and it does not necessarily involve

a confession of other or like sins upon the part of the informer. The district attorney was proceeding upon the theory that the statute applied to the facts as stated; Snow told him these facts; the same facts as told to the district attorney and acted upon were made the basis of the so-called criminal complaint, and the evidence shows that they were true.

If A should go to the district attorney and complain against B for having committed a crime, telling the district attorney the things that B had done, which the district attorney under a mistake of law believed to be a crime, and that B had committed it, it would be no less the duty of the district attorney to proceed against B, even though A should also tell or fail to tell the district attorney that he (A) had committed the same offense. It might lead to the arrest and punishment of the informer, but it would not exculpate B. Malice may be inferred from lack of probable cause, but here the probable cause that plaintiff had committed the acts complained of existed. Plaintiff, instead of attempting to negative the existence of probable cause that he had committed the acts that the district attorney believed to be the violation of the statute in question, and which was the basis of the case against him before the justice of the peace, proved the existence of facts showing probable cause and emphasized the truth of the matters upon which the so-called criminal complaint was founded. This proof consisted largely of the evidence stressed by plaintiff that he, as well as the defendants and others were and for many years had been doing the acts complained of, which were the basis of the prosecution.

Many other questions have been presented, but the concurrent requirements of malice and lack of probable cause for the action against plaintiff being absent, the facts come within the rule stated in *Van Meter v. Bass, supra.* Defendants' motion for nonsuit should therefore have been sustained.

For the above reasons, the judgment is reversed, with directions to dismiss the proceedings.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE BURKE concur.