The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 15, 2022

## 2022COA109

**No. 21CA0601, *Salazar v. Public Trust Institute* — Courts and
Court Procedure — Action Involving Exercise of Constitutional
Rights — Anti-SLAPP; Appeals — Standard of Review — De
Novo; Torts — Malicious Prosecution — Quasi-Judicial
Administrative Proceedings**

As a matter of first impression, a division of the court of
appeals establishes the manner in which a special motion to
dismiss under section 13-20-1101, C.R.S. 2021, commonly known
as Colorado's anti-SLAPP statute, is reviewed.  In addition, the
division holds for the first time that for an administrative
proceeding to form the basis of a malicious prosecution claim, it
must be quasi-judicial in nature.

Court of Appeals No. 21CA0601
City and County of Denver District Court No. 20CV33689
Honorable Alex C. Myers, Judge

Joseph A. Salazar,

Plaintiff-Appellee,

v.

Public Trust Institute and Suzanne Staiert,

Defendants-Appellants.

ORDER AFFIRMED IN PART, REVERSED IN PART
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TOW
Dailey and Berger, JJ., concur

Announced September 15, 2022

Levin Sitcoff Waneka PC, Bradley A. Levin, Jeremy A. Sitcoff, Robyn Levin
Clarke, Denver, Colorado, for Plaintiff-Appellee

Daniel E. Burrows, Denver, Colorado, for Defendants-Appellants

¶ 1    Defendants, Public Trust Institute (PTI) and Suzanne Staiert, appeal the district court's order denying their special motion to dismiss the complaint for malicious prosecution filed by plaintiff, Joseph A. Salazar. PTI and Staiert filed the special motion to dismiss under section 13-20-1101, C.R.S. 2021, commonly known as Colorado's anti-SLAPP statute.[1]

¶ 2    We affirm in part, reverse in part, and remand for further proceedings. In doing so, we consider, as a matter of first impression, the appropriate standard for resolving a special motion to dismiss under the anti-SLAPP statute, including whether a plaintiff's claims in this context are also subject to the standard set forth in *Protect Our Mountain Environment, Inc. v. District Court*, 677 P.2d 1361 (Colo. 1984) (*POME*). We also hold for the first time that an administrative proceeding may form the basis of a malicious prosecution claim only if the proceeding is quasi-judicial in nature.

## I.    Background

¶ 3    Salazar is a former state representative, former candidate for Colorado Attorney General, and former Executive Director of

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation."

1

Colorado Rising, an environmental protection nonprofit organization. Staiert is a former Deputy Secretary of State for Colorado and former Executive Director of PTI, a nonprofit organization Staiert describes as having been "founded to promote open and accountable government."

¶ 4     In December 2019, while serving as PTI's Executive Director, Staiert filed two administrative complaints — one with the Office of the Colorado Secretary of State (SOS) and one with the Colorado Independent Ethics Commission (IEC) — alleging that Salazar had violated lobbying laws and regulations.[2]  Specifically, based on Salazar's behavior on four occasions, Staiert asserted that Salazar had violated Colorado's lobbying statute, sections 24-6-301 to -309, C.R.S. 2021, and Amendment 41 to the Colorado Constitution.

¶ 5     After conducting an initial review, the Elections Division of the SOS investigated the allegations in the complaint. The Elections Division then filed a motion to dismiss "on grounds that there is no

_____

[2] Staiert, in her capacity as Executive Director, filed the complaints with both agencies. And in the opening brief, appellants treat Staiert as the complaining party. Thus, unless necessary to distinguish between them, we will refer to appellants collectively as Staiert.

factual or legal basis to establish violation of the lobbying regulation." The SOS granted the Elections Division's motion.

¶ 6 The IEC also reviewed Staiert's complaint. Salazar moved to dismiss the IEC complaint under C.R.C.P. 12(b)(1) and (5) for lack of jurisdiction and for failure to state a claim.[3] The IEC then held a public hearing on the complaint and motion to dismiss. At the hearing, Staiert voluntarily dismissed three of the four alleged violations. The IEC then dismissed the fourth alleged violation for failure to state a claim.

¶ 7 After the SOS and the IEC dismissed Staiert's complaints, Salazar filed an action for malicious prosecution against PTI and Staiert, arguing "they were aware that Salazar's conduct did not violate Colorado's lobbying laws, but nonetheless filed their administrative complaints with the goal of damaging Salazar's reputation." In his complaint, Salazar alleged that

> as a former Deputy Secretary of State [Staiert] knew there was no probable cause to bring these complaints against Plaintiff Salazar. Not only was Defendant Staiert fully knowledgeable of the relevant law here, but she actually

---

[3] The IEC Rules apply C.R.C.P. 12(b) to dispositive motions. Independent Ethics Commission Rules of Procedure, Rule 2(A)(8), https://perma.cc/B26Z-6FX5.

applied the law in similar circumstances during her time as Deputy Secretary of State . . . . Furthermore, the clear exceptions to "lobbying" that the SOS stated applied to Plaintiff Salazar were in existence at the time when Defendant Staiert was the Deputy Secretary of State.

¶ 8 Salazar's complaint contained one claim of malicious prosecution, premised on both the SOS and IEC complaints. Before answering the complaint, Staiert filed two motions: a motion to dismiss under Rule 12(b)(5) and a special motion to dismiss under Colorado's relatively new anti-SLAPP statute.

¶ 9 The district court denied both motions in separate orders. Staiert appeals the denial of the special motion to dismiss.[4]

## II. Applicable Law and Standard of Review

¶ 10 Staiert argues that the district court erred by denying her special motion to dismiss under the anti-SLAPP statute. She argues that (1) a malicious prosecution claim cannot be based on

---

[4] A denial of a special motion to dismiss under the anti-SLAPP statute is appealable. § 13-20-1101(7), C.R.S. 2021; *see also* § 13-4-102.2, C.R.S. 2021 (granting this court initial appellate jurisdiction over such appeals). Staiert sought leave to file an interlocutory appeal of the denial of the C.R.C.P. 12(b)(5) motion pursuant to C.A.R. 4.2. However, a division of this court denied that request.

truthful complaints to governmental investigators; (2) the First Amendment requires Salazar's claim be dismissed; and (3) the administrative proceedings before the SOS were insufficient to support a malicious prosecution claim. We reject the first two arguments but agree with the third.

## A. Anti-SLAPP Statute

¶ 11 In enacting the anti-SLAPP statute, the General Assembly declared "that it is in the public interest to encourage continued participation in matters of public significance and that this participation should not be chilled through abuse of the judicial process." § 13-20-1101(1)(a). The statute's purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." § 13-20-1101(1)(b). In other words, the anti-SLAPP statute seeks to balance both parties' constitutionally protected interest in petitioning the government, be it by participating in the legislative process, invoking the government's administrative or executive authority (such as by

reporting suspected unlawful activity), or instigating litigation to protect or vindicate one's interests.

¶ 12    To effectuate this balancing, the General Assembly created a mechanism whereby the district court can make an early assessment about the merits of claims brought in response to a defendant's petitioning or speech activity.

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue is subject to a special motion to dismiss unless the court determines that the plaintiff has established that there is a reasonable likelihood that the plaintiff will prevail on the claim.

§ 13-20-1101(3)(a).  In determining whether the plaintiff has demonstrated a reasonable likelihood of success, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." § 13-20-1101(3)(b).

## B.    Standard of Review

¶ 13    The parties disagree somewhat as to the standard by which we are to review this matter — including what, if any, deference we are

to afford the district court. No Colorado appellate court has yet to consider this question.

¶ 14    To the extent our resolution of this appeal turns on interpretation of the anti-SLAPP statute, our review is de novo. *See In re Estate of Garcia*, 2022 COA 58, ¶ 22. When interpreting a statute, we strive to give effect to the General Assembly's intent, reading the words and phrases of the statute in context, according them their plain meaning in view of the rules of grammar and common usage. *Id.*

¶ 15    In some respects, the special motion to dismiss is just that — a motion to dismiss. It seeks an early end to the litigation based, essentially, on the assertion that the plaintiff will ultimately, and inevitably, lose. We review de novo a district court's ruling on such a motion. *Bewley v. Semler*, 2018 CO 79, ¶ 14. In doing so, we (like the district court) must accept the factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff. *Id.* However, we may consider only the allegations contained in the complaint, documents attached as exhibits or referenced in the complaint, and matters of which the court may

take judicial notice.  *Peña v. Am. Fam. Mut. Ins. Co.*, 2018 COA 56, ¶ 14.

¶ 16    In other respects, the special motion to dismiss is more like a motion for summary judgment.  For example, when considering a summary judgment motion, the court is to consider supporting and opposing affidavits if any are filed, as well as matters set forth in the parties' discovery responses (if filed with the court).  C.R.C.P. 56(c).  Even where the pleadings and other submissions demonstrate that the material facts are undisputed, the court "must grant the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and it must resolve all doubts against the moving party." *Ryser v. Shelter Mut. Ins. Co.*, 2021 CO 11, ¶ 13.  As with a motion to dismiss, we review a summary judgment ruling de novo.  *Harvey v. Catholic Health Initiatives*, 2021 CO 65, ¶ 15.

¶ 17    In yet other ways, an anti-SLAPP special motion to dismiss is similar to a request for injunctive relief, as the moving party is essentially seeking to enjoin the nonmoving party's lawsuit.  Indeed, resolution of both turns on whether a party can demonstrate a reasonable likelihood of success.  *Compare* § 13-20-1101(3)(a)

8

(providing that a special motion to dismiss is to be granted "unless the court determines that the plaintiff has established that there is a reasonable likelihood that the plaintiff will prevail on the claim"), *with In re Estate of Feldman*, 2019 CO 62, ¶ 17 (noting that a "prerequisite[] to preliminarily enjoining someone is a reasonable likelihood of the moving party's success on the merits" (citing *Rathke v. MacFarlane*, 648 P.2d 648, 653 (Colo. 1982))).  In contrast to a motion to dismiss and a motion for summary judgment, we review the grant or denial of a request for preliminary injunction for an abuse of discretion.[5]  *Friends of Denver Parks, Inc. v. City & Cnty. of Denver*, 2013 COA 177, ¶ 38.  In doing so, we will not disturb the district court's factual determinations if they are supported by the record.  *Id.*

¶ 18     In short, while the special motion to dismiss under the anti-SLAPP statute has similarities to each of these three types of motions, the differences call for some variance from each in terms

---

[5] In truth, because a special motion to dismiss, if successful, would bar the litigation, it is arguably more akin to a request for a permanent injunction.  But we compare it to a request for a preliminary injunction because of the General Assembly's invocation of the "reasonable likelihood of success" rubric.

9

of the standard of review. For example, the question is not merely whether the claim asserts a plausible basis for relief, *see Warne v. Hall*, 2016 CO 50, ¶ 24, but whether the plaintiff has a reasonable likelihood of success. The question is not whether undisputed facts demonstrate that one party is entitled to judgment but whether any material disputes of fact are reasonably likely to be resolved in the plaintiff's favor. And the question is not whether the court should grant *preliminary* injunctive relief (which can, of course, be revisited at a later point in the litigation) but whether the case should be dismissed with prejudice.

¶ 19 Because of these differences, we reject Salazar's call for us to defer to the district court's factual findings. First, in resolving a special motion to dismiss, the district court does not make factual findings, at least in the traditional sense. Indeed, the statute provides that the district court's determination, at this early stage, that there was a reasonable likelihood of success on the merits is not "admissible in evidence at any later stage of the case or in any subsequent proceeding." § 13-20-1101(3)(c). Moreover, to the extent the district court's preliminary determination can be considered a factual finding, it is not based on any unique ability to

observe the witnesses but, rather, on a review of documents alone. In these circumstances, an appellate court need not defer to the district court's factual findings. *See Tyra Summit Condos. II Ass'n v. Clancy*, 2017 COA 73, ¶ 14.

¶ 20 Finally, we agree with Staiert that the review of a special motion to dismiss is similar to a review of the sufficiency of the evidence, in that a court reviewing such a motion is called on to determine whether the plaintiff's allegations and supporting affidavit, viewed in conjunction with any opposing affidavit, meet the legal threshold of establishing a reasonable likelihood of success on the merits. Thus, we are reviewing a legal determination necessary for the case to proceed, rather than a discretionary act that is not case-dispositive such as the granting of a preliminary injunction.

¶ 21 Taking into account the similarities and differences among these various motions, we conclude that we review de novo a district court's ruling on a special motion to dismiss to determine whether the plaintiff has established a reasonable likelihood of prevailing on the claim. In doing so, we (like the district court) consider first whether the motion and supporting affidavit establish

a prima facie case that the plaintiff's cause of action falls within the anti-SLAPP statute — that is, whether the claim arises from an act "in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue." § 13-20-1101(3)(a). If so, we then consider the pleadings and the supporting and opposing affidavits to determine whether the nonmoving party (the plaintiff) has established a reasonable likelihood of success on his claim. We neither simply accept the truth of the allegations nor make an ultimate determination of their truth. Instead, ever cognizant that we do not sit as a preliminary jury, we assess whether the allegations and defenses are such that it is reasonably likely that a jury would find for the plaintiff.

## C. Reasonable Likelihood

¶ 22 The statute does not define the term reasonable likelihood. But in other contexts, Colorado appellate courts have treated "reasonable likelihood" as equivalent to "reasonable probability." For example, when seeking preliminary injunctive relief pursuant to C.R.C.P. 65(a), under one formulation of the standard of proof, the moving party must demonstrate "a reasonable probability of success on the merits." *Rathke*, 648 P.2d at 653. But other

appellate cases define the standard of proof in that respect as "reasonable likelihood."  *See, e.g., Estate of Feldman*, ¶ 17; *Dallman v. Ritter*, 225 P.3d 610, 621 (Colo. 2010); *Sanger v. Dennis*, 148 P.3d 404, 407 (Colo. App. 2006); *Bd. of Cnty. Comm'rs v. Fixed Base Operators, Inc.*, 939 P.2d 464, 467 (Colo. App. 1997).[6]  The case law analyzing the grant or denial of preliminary injunctions thus uses the terms "reasonable probability" and "reasonable likelihood" interchangeably.

¶ 23    We presume the General Assembly was aware of judicial treatment of this phrase when it enacted the anti-SLAPP statute. *See Advanced Component Sys. v. Gonzales*, 935 P.2d 24, 27 (Colo. App. 1996), *rev'd on other grounds*, 949 P.2d 569 (Colo. 1997). Thus, we conclude that "reasonable likelihood" in the anti-SLAPP statute is synonymous with "reasonable probability."

### III.   Application

¶ 24    Neither party disputes that Salazar's claim arises out of Staiert's petitioning activity or speech in connection with a public

---

[6] In light of this longstanding judicial treatment of these phrases, we disagree with the district court's conclusion that reasonable likelihood is distinguishable from reasonable probability.  This disagreement, however, does not affect our disposition.

13

issue. Thus, we turn to whether Salazar has demonstrated a reasonable likelihood of success on his claim. Staiert contends that he has failed to do so for three reasons.

## A. Malicious Prosecution Claim Premised on "Truthful Complaints"

¶ 25 Staiert first argues that Salazar's claim "should have been dismissed because Colorado does not allow a malicious prosecution suit based on truthful complaints to government investigators." We are not persuaded.

¶ 26 To prove a claim for malicious prosecution, a plaintiff must establish "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages." *Hewitt v. Rice*, 154 P.3d 408, 411 (Colo. 2007).

¶ 27 Probable cause requires that the defendant believed "in good faith . . . in the [wrongful conduct] of the [plaintiff in the underlying action], and that such belief [was] reasonable and prudent." *Montgomery Ward & Co. v. Pherson*, 129 Colo. 502, 508, 272 P.2d 643, 646 (1954); *see* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 119, at 876 (5th ed. 1984) ("Probable cause is a

14

reasonable ground for belief in the guilt of the party charged.").
"Probable cause is judged by appearances to the defendant at the time he initiates prosecution." *Prosser and Keeton* § 119, at 876 (footnote omitted).

¶ 28     Relying on *Climax Dairy Co. v. Mulder*, 78 Colo. 407, 418, 242 P. 666, 671 (1925), Staiert contends that "factually truthful" complaints cannot support malicious prosecution claims.[7]  In that case, the defendant reported facts to law enforcement that law enforcement then used to obtain a search warrant for the plaintiff's premises.  *Id.* at 409, 242 P. at 667.  Based on the search, the plaintiff was arrested and criminally charged, but then acquitted. *Id.*  Following his acquittal, he sued the defendant for malicious prosecution.  *Id.* at 408-09, 242 P. at 667.  The Colorado Supreme Court concluded that because the defendant provided law

---

[7] Staiert also cites *Walker v. Van Laningham*, 148 P.3d 391 (Colo. App. 2006), for this proposition.  But Staiert misreads that opinion. Though the plaintiff in *Walker* alleged that the complaints to the government were unfounded, the opinion points out that the plaintiff had, in fact, been convicted of some of the ordinance violations that had been reported.  *Id.* at 393.  Thus, the opinion cannot be read to suggest that a party that reports alleged misconduct to the proper government authorities cannot be sued even if, when making that report, the party knew the report was factually or legally baseless.

enforcement with a "full, fair, and honest statement of the facts," *id.* at 419, 242 P. at 671, he could not then be liable because the "officer incorrectly determine[d] that such facts constitute[d] a crime." *Id.* at 417-18, 242 P. at 670.

¶ 29 Staiert asserts that *Climax Dairy*'s holding establishes that so long as a defendant's complaint is factually truthful, it can never give rise to a malicious prosecution claim. But *Climax Dairy* does not stand for such a broad proposition. In that case, the defendant's knowledge was limited to the facts. There was no indication that he was aware of the applicable legal standards or whether the plaintiff's conduct amounted to prosecutable criminal behavior. The defendant in good faith believed that the plaintiff's conduct was wrongful and, thus, he did not lack probable cause.

¶ 30 An entirely different scenario arises where a defendant is well versed in not only the facts, but the applicable law as well. If such a defendant contributes to bringing a complaint when they know that there is no legal basis for "prosecuting" the plaintiff, then they may be liable for malicious prosecution because there would not be probable cause for such a complaint. This is true regardless of

whether the factual allegations raised in the defendant's complaint are truthful.

¶ 31 The allegations in this case are less like those in *Climax Dairy* and more in line with the latter scenario. Although the factual allegations may have been truthful, there is a reasonable likelihood that Salazar will be able to demonstrate that Staiert knew those facts did not add up to a violation of the law. *See POME,* 677 P.2d at 1369. We therefore reject Staiert's contention that "[b]ecause everything in Staiert's complaints was truthful . . . [Salazar] cannot pursue this case."

## B. First Amendment Protection

¶ 32 Staiert next argues that the First Amendment protects her conduct and requires that Salazar's claim be dismissed. Specifically, she asserts that (1) Salazar failed to establish "actual malice," and (2) Salazar's claim fails to meet the standard set forth in *POME.* We decline to address the first contention — as it is unpreserved — and reject the second.

### 1. Actual Malice

¶ 33 Staiert argues that "in a suit involving speech about a public figure like former Representative Salazar, a plaintiff must prove

'actual malice' before liability may attach." According to Staiert, "actual malice requires clear evidence that the defendant made a false statement of fact, either knowing it to be false or in reckless disregard thereof." And, relying on *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), she asserts that actual malice is different from malice in the common law sense, and must be shown with "'convincing clarity,' without resort to presumptions."

¶ 34    In her special motion to dismiss, however, Staiert did not argue that Salazar was required to sufficiently plead actual malice to establish a reasonable likelihood of success on his malicious prosecution claim. In the briefing on the special motion to dismiss, Staiert cited *Sullivan* once in the motion itself and once in the reply brief. The first reference was asserted as support for the following statement: "Only in very limited circumstances is it proper to use the levers of government to punish speech regarding public figures like [Salazar]." The second reference, contained in a string cite in a footnote, parenthetically referenced the holding from the case, including that a public figure bringing a libel suit must show statements made with knowledge of falsity or reckless disregard for the truth. The string cite containing this reference was asserted in

18

support of Staiert's position regarding the accuracy of her statement of the *POME* principles.  These passing references and, at most, undeveloped arguments are insufficient to have preserved the argument asserted on appeal.  *See Fiscus v. Liberty Mortg. Corp.*, 2014 COA 79, ¶ 35 n.1 ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

¶ 35     Because this argument is raised for the first time on appeal, we decline to review it.  *See Mangone v. U-Haul Int'l, Inc.*, 7 P.3d 189, 191 (Colo. App. 1999) ("[P]laintiff did not raise this issue before the trial court, and the issue was not properly preserved for appellate review.").

### 2.    Application of *POME*

¶ 36     Staiert next contends that Salazar failed to produce sufficient evidence to meet the *POME* test.

¶ 37     *POME* addressed the scope of the First Amendment right to petition in the context of a claim for abuse of process.  In *POME*, an environmental group filed an unsuccessful C.R.C.P. 106 action challenging a county board's decisions to rezone on behalf of a developer.  677 P.2d at 1362-63.  The developer then sued the

group for abuse of process. *Id.* at 1364. The environmental group moved to dismiss the developer's claims, arguing that the Rule 106 action was a lawful exercise of its First Amendment right to petition the government for redress of grievances. *Id.*

¶ 38    The Colorado Supreme Court concluded that the act of filing a lawsuit challenging governmental activity is protected under the First Amendment, and therefore the parties filing the lawsuit are immunized from liability, unless the lawsuit is baseless or a sham. *Id.* at 1365-66. It held that when "a plaintiff sues another for alleged misuse or abuse of the administrative or judicial processes of government, and the defendant files a motion to dismiss by reason of the constitutional right to petition," the plaintiff must demonstrate that the defendant's petitioning activity was not immunized from liability under a three-part test. *Id.* at 1369. The plaintiff must make a sufficient showing that

> (1) the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion; and (2) the primary purpose of the defendant's petitioning activity was to harass the plaintiff or to effectuate some other improper objective; and (3) the defendant's petitioning activity had

> the capacity to adversely affect a legal interest
> of the plaintiff.

*Id.*

¶ 39     As a threshold matter, Salazar contends that "the procedure set forth in *POME* is inapplicable to cases where a special motion to dismiss is filed pursuant to the Anti-SLAPP statute" because the application of both imposes an excessive burden on a plaintiff such as himself. Salazar also argues that the "heightened standards set out in *POME* are overridden by the Anti-SLAPP statute." He points out that while "the Anti-SLAPP statute created a threshold proceeding for testing constitutional viability, *POME* explicitly created a summary-judgment procedure for assessing the same issues."

¶ 40     It is true that anti-SLAPP motions and *POME* motions occur at different procedural stages and place different burdens on a plaintiff.[8] A challenge under the anti-SLAPP statute is a special

---

[8] We do not agree with Salazar that, by enacting the anti-SLAPP statute, the General Assembly intended to replace the *POME* analysis. When a legislature seeks to abrogate established case law, it generally must clearly express its intent to do so. *Cf. Preston v. Dupont*, 35 P.3d 433, 440 (Colo. 2001) (discussing legislative abrogation of common law). The anti-SLAPP statute does not

21

motion to dismiss and only allows the court to consider the pleadings and supporting and opposing affidavits when assessing whether the plaintiff has established a reasonable likelihood of prevailing on his claim. § 13-20-1101(3). In contrast, a motion to dismiss under the *POME* standard must be converted into a motion for summary judgment, giving the "the parties a reasonable opportunity to present all material pertinent to the motion." 677 P.2d at 1369. And under *POME*, "the plaintiff must make a sufficient showing to permit the court to reasonably conclude that the defendant's petitioning activities were not immunized from liability under the First Amendment." *Id.*

¶ 41     However, these differences do not mean that the *POME* test should not be considered when ruling on a special motion to dismiss under the anti-SLAPP statute. The ultimate question in that circumstance is whether the plaintiff has demonstrated a

---

contain any such expression of intent. Nor do we read the statute to be necessarily inconsistent with *POME*, as opposed to supplementing it. In any event, even if the anti-SLAPP statute's procedural aspects were intended to replace a *POME* motion, nothing in the statute overrides the substantive requirements *POME* establishes for a lawsuit arising out of a defendant's First Amendment activity to meet constitutional muster.

reasonable likelihood that he will prevail on his claim. To do so in a case involving the defendant's exercise of the right to petition, *POME* establishes what is necessary to overcome a constitutional challenge to the claim. In other words, Salazar must ultimately satisfy the *POME* standard to prevail on his malicious prosecution claim. Therefore, when addressing at this early stage whether he has demonstrated a reasonable likelihood of success, it is necessary to consider — as the district court did — whether he has a reasonable likelihood of making the required showing under *POME*.

¶ 42 Applying the *POME* test to Salazar's malicious prosecution claim, we conclude that he successfully established a reasonable likelihood of successfully meeting all three elements.

¶ 43 The first element requires a showing that the defendant's administrative or judicial claims were devoid of reasonable factual support, or, if so supportable, lacked any cognizable basis in law for their assertion. *Id.* Both the SOS and IEC complaints Staiert filed against Salazar were dismissed. The SOS concluded that none of the alleged instances of misconduct constituted a lobbying violation. As for the IEC complaint, Staiert herself conceded to the IEC that three of the four instances did not actually meet the

23

definition of lobbying, and the final instance was dismissed by the IEC for failure to state a claim pursuant to Rule 12(b)(5). Therefore, Salazar sufficiently established that the administrative claims lacked any cognizable basis in law.[9]

¶ 44     Next, Salazar demonstrated a reasonable likelihood of proving that Staiert had an improper objective in filing the complaints. His complaint alleges that Staiert brought these complaints despite having personal knowledge that they lacked a legal basis. As the district court noted, Staiert's complaints "expressly accuse Mr. Salazar of violating Colorado's lobbying laws in the face of contrary advisory decisions based on closely aligned facts — some of which Ms. Staiert drafted herself." Additionally, Salazar's complaint alleges that Staiert refused to participate in various stages of the SOS and IEC proceedings, yet issued a press release accusing Salazar of violating lobbying laws. The pleadings and affidavits

---

[9] Staiert argues that we should modify *POME* and require that Salazar prove that her "complaint was false, baseless, or otherwise a sham proceeding with no lawful purpose" since the malicious prosecution claim here differs from the abuse of process claim in *POME*. We discern no basis — nor the authority — to modify supreme court precedent. Although *POME* involved an abuse of process case, its factors are equally applicable to the claim here.

thus sufficiently establish a reasonable likelihood that Salazar will be able to show that Staiert brought the complaints for an improper purpose.

¶ 45    As to the third element, Staiert does not appear to contend that Salazar's legal interests could not have been adversely affected by these complaints.

¶ 46    We pause to note an important detail. The district court's (and our) determination that Salazar has demonstrated a reasonable likelihood of success is in no way an opinion that he will actually prevail. Indeed, the statute prohibits a jury that ultimately hears the case from learning about that determination and prohibits this early screening determination from being given the effect of the law of the case. § 13-20-1101(3).

¶ 47    That being said, at this preliminary stage, we conclude that Salazar successfully demonstrated a reasonable likelihood that he will prevail.

### C.    Sufficiency of the SOS Proceedings

¶ 48    Staiert next argues that the district court should have at least granted the special motion to dismiss as to the SOS proceedings

25

because those proceedings lacked the necessary quasi-judicial character to support a malicious prosecution claim.[10]  We agree.

### 1.  Quasi-Judicial Administrative Proceedings as "Prior Actions" for Malicious Prosecution Claims

¶ 49    As noted, to prevail on his malicious prosecution claim, Salazar must prove that Staiert contributed to bringing a "prior action" against him.  *Hewitt*, 154 P.3d at 411.  Staiert argues that for an administrative proceeding to be such a "prior action," it must be quasi-judicial in nature.

¶ 50    Historically, the "prior action" element was limited to judicial proceedings.  Under common law, the thrust of the tort of malicious prosecution has been "upon the misuse of criminal — and sometimes civil — actions as a means for causing harm."  *Prosser and Keeton* § 119, at 870.  Although the action "began as a remedy for unjustifiable criminal procedings [sic]," it has extended into the field of "the wrongful initiation of civil suits."  *Id.* § 120, at 889.

---

[10] Staiert does not challenge the IEC proceedings on this ground.  In fact, in her motion to dismiss under C.R.C.P. 12(b)(5) she noted that the proceedings before the IEC were "probably sufficient to get past 12(b)(5)."

¶ 51    Colorado courts have generally followed suit, holding that the first element of a malicious prosecution claim may be established if a defendant "was a party to or assisted in a criminal or civil proceeding against the plaintiff." *Walford v. Blinder, Robinson & Co.,* 793 P.2d 620, 623 (Colo. App. 1990); *see also Slee v. Simpson,* 91 Colo. 461, 465, 15 P.2d 1084, 1085 (1932) ("[O]ne of the essential elements of a malicious prosecution is the commencement or continuance of an original criminal or civil judicial proceeding.").

¶ 52    In *Walford,* a division of this court extended the reach of the tort and held that "a judicially enforceable arbitration proceeding . . . may form the basis for a malicious prosecution action." 793 P.2d at 623-24. In reaching its conclusion, the division cited *Melvin v. Pence,* 130 F.2d 423 (D.C. Cir. 1942), for the proposition that administrative proceedings can give rise to malicious prosecution claims. According to *Melvin,*

> [t]he same harmful consequences may flow from the groundless and malicious institution of proceedings in them as does from judicial proceedings similarly begun. When one's livelihood depends upon a public license, it makes little difference to him whether it is taken away by a court or by an administrative body or official. Nor should his right to redress the injury depend upon the technical form of

27

> the proceeding by which it is inflicted. The administrative process is also a legal process, and its abuse in the same way with the same injury should receive the same penalty.

*Id.* at 426.

¶ 53    Several jurisdictions that have recognized malicious prosecution actions based on administrative proceedings have limited the concept to those proceedings that are quasi-judicial in nature. *See Hardy v. Vial*, 311 P.2d 494, 495 (Cal. 1957) ("It is the general rule that a malicious prosecution action may be founded upon a proceeding before an administrative body. . . . The theory of these authorities is that the same harmful consequences may result from the malicious institution of administrative proceedings as from judicial proceedings maliciously begun . . . ."); *Kauffman v. A. H. Robins Co.*, 448 S.W.2d 400, 403 (Tenn. 1969) ("[C]ertain administrative proceedings are at least 'quasi-judicial' to the extent that they may be the basis for a malicious prosecution action, provided all the requisite elements of such an action are both alleged and proved."); *Hillside Assocs. v. Stravato*, 642 A.2d 664, 669 (R.I. 1994) ("[O]nly quasi-judicial contested administrative determinations or proceedings that establish the legal rights,

duties, or privileges of a party after a hearing and that embody sufficient attributes of judicial proceedings may generate causes of action for malicious prosecution or for abuse of process.").

¶ 54  Consistent with these authorities, the Restatement (Second) of Torts § 680 (Am. L. Inst. 1977), has recognized that "[o]ne who takes an active part in the initiation, continuation or procurement of civil proceedings against another before an administrative board that has power to take action adversely affecting the legally protected interests of the other, is subject to liability for any special harm caused thereby."  In other words, a quasi-judicial administrative proceeding may lead to a malicious prosecution claim.  *Id.*; *see Hellas Constr., Inc. v. Rio Blanco Cnty.*, 192 P.3d 501, 504 (Colo. App. 2008).

¶ 55  We agree with this reasoning.  Consequently, we hold that for an administrative proceeding to qualify as a "prior action" that may give rise to a malicious prosecution claim, it must be quasi-judicial in nature.

## 2.   The Secretary of State Proceedings

¶ 56  We turn, then, to whether Salazar has demonstrated a reasonable likelihood of success on his malicious prosecution claim

29

insofar as the claim is based on Staiert's SOS complaint. We conclude that Salazar has failed to demonstrate a reasonable likelihood of proving that the SOS proceedings were sufficiently quasi-judicial in nature to satisfy the "prior action" element of his claim.

### a. Preservation

¶ 57 Initially, we reject Salazar's contention that this issue is not properly before this court because "the district court did not address the substance of that issue in its Order on the Special Motion to Dismiss."

¶ 58 In its order denying Staiert's motion to dismiss under C.R.C.P. 12(b)(5), the district court considered this question and found that "the SOS proceeding here was sufficiently judicial to satisfy the first element of a malicious prosecution claim." In her special motion to dismiss, Staiert reiterated the argument that the SOS proceeding was not sufficiently judicial in nature to establish the first prong of Salazar's claim.

¶ 59 In ruling on the special motion to dismiss, the district court found that "Salazar has shown a reasonable likelihood of prevailing on his claim," including showing that "the defendant contributed to

bringing a civil or criminal proceeding against the plaintiff." The district court further noted that because its order on the Rule 12 motion to dismiss addressed Staiert's argument that the administrative actions in this case could not serve as the basis of a malicious prosecution claim, that argument would not be re-addressed in the order on the special motion to dismiss. In substance, the court incorporated by reference its prior rejection of the argument that the SOS proceeding was not a quasi-judicial proceeding. Therefore, this question is properly before us.

b.    Analysis

¶ 60    A quasi-judicial proceeding is one that "involves the determination of rights, duties, or obligations so as to adversely affect the protected interests of specific individuals, and it is reached by application of preexisting legal standards or policy considerations to past or present facts to resolve the particular interests in question." *Hellas Constr.*, 192 P.3d at 504.

¶ 61    "[U]nsuccessful efforts to secure the institution of proceedings, however malicious or unfounded, are not actionable as malicious prosecution." *Melvin*, 130 F.2d at 425. "The proceeding must, however, have been commenced. It is not enough that a mere

31

complaint has been made to the proper authorities for the purpose of setting prosecution in motion, where no official action ever has been taken." *Prosser and Keeton* § 119, at 871.

¶ 62 The regulations in effect at the time Staiert filed the complaint provide that, upon receipt of a complaint, the Elections Division conducts an initial review. Dep't of State Rule 4.3.1, 8 Code Colo. Regs. 1505-8 (effective Jan. 30, 2020). Based on the initial review, the Elections Division may either dismiss the complaint or conduct an investigation. *Id.* at Rule 4.3.2. After an investigation, the Elections Division must make a motion to the Secretary of State to dismiss the complaint if the division determines that it "does not have reasonable grounds to believe that a violation . . . has occurred, or otherwise concludes that enforcement pursuant to Rule 4.6 is not warranted." *Id.* at Rule 4.5.3. Otherwise, the Elections Division initiates a formal, public hearing. *Id.* at Rule 4.6.1.[11]

---

[11] Salazar's assertion that the SOS "will, following its investigations, conduct hearings on the alleged infraction" is incorrect. The regulation clearly provides that the Elections Division may initiate a hearing only "[i]f, after its investigation, the division has reasonable grounds to believe that a violation of [the lobbying statute] has

¶ 63     It is only at this point in the process that the Secretary of

State has authority to take legal action against the subject of the

complaint. *See id.* at Rule 4.6.2 (identifying the actions the

Secretary of State may take). In other words, only at this

enforcement stage does the Secretary of State have the "power to

take action adversely affecting the legally protected interests" of the

subject of the complaint. *See* Restatement (Second) of Torts § 680.

¶ 64     Staiert's complaint only progressed through the investigation

phase. At that point, the Elections Division asked the Secretary of

State to dismiss the complaint. No formal proceedings were filed

and no hearing was initiated or held. Consequently, we conclude

that the SOS proceedings were not quasi-judicial in nature and,

thus, cannot support a claim for malicious prosecution.

¶ 65     Because Salazar cannot establish the "prior action" element of

his malicious prosecution claim as it relates to the SOS

proceedings, he has not demonstrated a reasonable likelihood of

success on that aspect of his claim. Accordingly, the district court

---

occurred." Dep't of State Rule 4.6.1, 8 Code Colo. Regs. 1505-8
(effective Jan. 30, 2020).

erred by denying Staiert's special motion to dismiss with respect to this portion of Salazar's claim.

## IV. Attorney Fees

¶ 66 Staiert requests attorney fees under section 13-20-1101(4). That provision authorizes "a prevailing defendant on a special motion to dismiss" to recover attorney fees and costs. *Id.* Although we partially reverse the district court's order denying the special motion to dismiss, Salazar is still able to pursue a malicious prosecution claim at this time. Thus, we do not view Staiert as a prevailing defendant, and we deny the request.

## V. Disposition

¶ 67 The order is affirmed in part and reversed in part. The case is remanded for further proceedings on Salazar's claim arising out of the IEC complaint.

JUDGE DAILEY and JUDGE BERGER concur.